UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
DEREK FAN, on behalf of himself and
all others similarly situated,

            *Plaintiff,*

   -against-

PHL VARIABLE LIFE INSURANCE
COMPANY,

            *Defendant.*

------------------------------------------------------------X

18 Civ. 1288 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

PHL Variable Insurance Company ("PHL" or "Defendant") moves to dismiss this class action lawsuit brought by Plaintiff Derek Fan on behalf of himself and others similarly situated for want of personal jurisdiction. Fan owns a universal life insurance policy issued by PHL and contends that PHL's most recent cost of insurance ("COI") adjustment, announced and implemented on his policy in 2017 (the "2017 COI Increase"), is a breach of PHL's express and implied obligations under its contracts with policyholders. For the reasons set forth below, Defendant's motion to dismiss for want of personal jurisdiction is DENIED.

## BACKGROUND

According to the well drafted allegations of the Second Amended Class Action Complaint,[1] (Dkt. 43), PHL is an insurance corporation organized under the laws of Connecticut that issues

---

[1] In deciding the motion to dismiss for want of jurisdiction, the Court takes as true the allegations in Plaintiffs' Amended Complaint and resolves all factual disputes in Plaintiffs' favor. *See Schentag v. Nebgen*, No. 1:17-CV-8734-GHW, 2018 WL 3104092, at *14 (S.D.N.Y. June 21, 2018).

PHL Accumulator Universal Life ("PAUL") policies. (*Id.* ¶¶ 2, 18). Plaintiff Derek Fan purchased a PAUL policy around June 2008 in the face amount of $500,000, which he still owns today. (*Id.* ¶ 14).

The PAUL policies at issue are universal life insurance policies which differ from "term" or "whole" life insurance policies because they offer more flexibility. (*Id.* ¶ 63). Policyholders can change the amount or frequency of premium payments as long as their policies contain sufficient cash value to cover the COI rate and any other monthly charges. (*Id.*) The COI is the highest expense that a policyholder pays under these policies and it is forfeited entirely to PHL. (*Id.* ¶ 69). Policyholders can also contribute excess money into their policies, the value of which accrues interest that can be used to fund future payments. (*Id.*) This structure means that when a COI rate increase is imposed, the policies generally lose value as more money is taken out to cover the monthly premium. (*Id.* ¶ 70). Such an increase also makes maintaining a given PAUL policy more expensive, increasing the likelihood of a policy lapse. (*Id.* ¶ 139).

The terms of the PAUL policies constrain PHL's discretion to set or increase the COI charge. (*Id.* ¶ 71). Specifically, the PAUL policies prohibit PHL from setting or increasing the rate to "recoup past losses, including past losses . . . based on changes in interest rates, [p]olicy lapse rates, or other experience factors," or because of "losses due to diminished returns on PHL's general investment portfolio." (*Id.*). PHL also cannot "[s]et or increase charges in order to negate or offset PHL's obligation to pay credited interest to the [u]niversal [l]ife policies at the minimum guaranteed rates," or discriminate within a class of insureds. (*Id.* ¶¶ 71-72).

Prior COI Rate Increase Litigation

PHL has raised the COI rate on some of its PAUL policies at least twice before, resulting in previous legal challenges. (*Id.* ¶¶ 75-86). In March 2010, PHL implemented a COI increase in

2

2010 for a subset of PAUL policies. (*Id.*). In 2011, PHL again announced a COI rate increase and that same year, a class action lawsuit was filed challenging both the 2011 and 2010 rate increases in the Southern District of New York. *Fleisher, et al. v. Phoenix Life Ins. Co., et al.*, Case No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ("*Fleisher*") (*Id.* ¶ 87). Three years later, another class action lawsuit was filed challenging PHL's COI rate increases. *SPRR LLC v. PHL Variable Insurance Company*, No. 14-cv-8714 (CM) (S.D.N.Y.) ("*SPRR*"). (*Id.* ¶ 88). These actions were joined before the same federal judge in New York and ultimately settled (the "*Fleisher/SPRR* settlement"). (*Id.* ¶¶ 89-90). As part of the settlement agreement, PHL agreed not to raise the COI rate on the PAUL policies of affected class members through and including December 31, 2020. (*Id.* ¶ 90).

Nassau Re's Acquisition of PHL

In June 2016, PHL and its affiliates were sold to a private equity firm, Nassau Reinsurance Group Holdings, L.P. ("Nassau Re"). (*Id.* ¶ 104). As part of the transaction, Nassau Re contributed $100 million of new equity capital to PHL and its affiliates and funded $80 million of new equity capital to Nassau Re's reinsurance affiliate in connection with a reinsurance agreement between the affiliate and PHL. (*Id.* ¶ 105). Nassau Re was co-founded by Phillip Gass and Kostas Cheliotis in 2015 and since the acquisition of PHL, Gass has served as PHL's President and Cheliotis has served as PHL's Vice President and Secretary. (*Id.* ¶¶ 24-28). A press release announcing the closing of the transaction quoted Gass stating "[o]ur immediate priorities are to bolster [PHL's] ratings and risk-based capital ratios while improving the company's profitability." (*Id.* ¶ 106).

Nassau Re has an office at 717 Fifth Avenue, New York, NY where both Gass and Cheliotos work at least some of the work week. (*Id.* ¶¶ 24-28). PHL and Nassau also share executive management, including high-level executive officers. (*Id.* ¶ 31). Cheliotis who, in

3

addition to serving as Vice President and Secretary to PHL is also the General Counsel of Nassau Re, resides in New York and is admitted to practice law only in New York. (*Id.* ¶ 32). Since the acquisition, all of PHL's executive officers and employees use "@nsre.com" as their email domain name. (*Id.* ¶ 41). PHL also continues to maintain its customer service center in Albany, New York and PHL's filings with regulators and exchanges, including with the NASD, list PHL's business address as the address of the Albany, New York service center. (*Id.* ¶¶ 36-39).

PHL's 2017 COI Increase

Around August 2017, fourteen months after Nassau Re acquired PHL and its affiliates, Fan received a form notice from PHL informing him that PHL was increasing COI charges on various universal life policies, including his PAUL policy. The letter was on PHL letterhead which listed a New York address for PHL. (*Id.* ¶ 38; Ex. A). The letter stated there would be an "overall increase to cost of insurance rates, as well as progressive increases to cost of insurance rates beginning when an insured reaches age 71 through age 85," which was necessary because "certain anticipated experience factors are now less favorable than we anticipated when we established the cost of insurance rate schedule." (*Id.* ¶ 117). Although the notice failed to disclose this, Fan later learned that for policies subject to the *Fleisher/SPRR* settlement, the 2017 COI Increase will not be implemented until after December 31, 2020. (*Id.* ¶ 123). Fan's policy was not subject to the prior COI rate increases and he was not a party to the *Fleisher/SPRR* settlement. (Id. ¶ 92). As such, the 2017 COI Increase has been applied to his policy since "the next anniversary date after November 5, 2017." (*Id.* ¶¶199-22).

Fan alleges that the 2017 COI Increase is motivated by "PHL's desire to avoid its contractual obligations, to recoup past losses, and for Nassau to recoup its investment in [PHL and its affiliates], including the capital contributions Nassau Re made when it acquired [PHL and its

4

affiliates]," in direct violation of the PAUL policies' terms. (*Id.* ¶130). Fan further alleges that the policies discriminate between policyholders who were part of the *Fleisher/SPRR* settlement and those who were not, which also violates the PAUL policies' terms. (*Id.* ¶ 126).

Fan filed this action in the Southern District of New York on February 13, 2018 on behalf of himself and other PAUL policyholders who received the COI 2017 Increase notice, excluding those whose policies are subject to *Fleisher/SPRR* settlement agreement. (*Id.* ¶¶ 153-54; Dkt. 1). He claims breach of contract and breach of the implied covenant of good faith and fair dealing, and seeks to enjoin the 2017 COI Increase, a declaration that the 2017 COI Increase is unlawful, and damages. (*Id.* ¶¶ 167-90).

## DISCUSSION

### I. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)

#### A. Legal Standard

##### i. Fed. R. Civ. P. 12(b)(2)

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). The court may consider affidavits outside the plaintiff's complaint, but "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Schentag v. Nebgen*, No. 1:17-CV-8734-GHW, 2018 WL 3104092, at *14 (S.D.N.Y. June 21, 2018). Where the parties present conflicting affidavits, "all factual disputes are resolved in the plaintiff's favor." *Id.; see also Werst v. Sarar USA Inc.*, No. 17-CV-2181 (VSB), 2018 WL 1399343, at *4 (S.D.N.Y. Mar. 16, 2018).

"At the pleading stage—and prior to discovery—a plaintiff need only make a *prima facie* showing that jurisdiction exists." *Schentag v. Nebgen*, No. 1:17-CV-8734-GHW, 2018 WL 3104092, at *13 (S.D.N.Y. June 21, 2018). "Such a showing entails making legally sufficient

allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (internal citation and quotation marks omitted). Where no evidentiary hearing has been conducted, the plaintiff must only allege "facts that, if credited, would suffice to establish that jurisdiction exists." *Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 622 (S.D.N.Y. 2015).

### ii. Personal Jurisdiction

In a diversity action, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001). Under New York law, establishing personal jurisdiction requires satisfying the requirements of either the state's general jurisdiction statute, N.Y. C.P.L.R. § 301, or its long-arm jurisdiction statute, N.Y.C.P.L.R. § 302(a). Where personal jurisdiction is satisfied under New York's jurisdictional statutes, the court must also confirm that the exercise of personal jurisdiction comports with the Due Process Clause of the U.S. Constitution. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

The exercise of jurisdiction over non-domiciliary defendants is constitutional where defendants have "certain minimum contacts" with the forum state and the maintenance of a suit does not offend "traditional notions of fair play and substantial justice." *Metro Life*, 84 F.3d at 577 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Second Circuit has stated it would be "rare" and "unusual" for New York's long-arm statute to be satisfied, but not the Due Process Clause. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 170 (2d Cir. 2013); *see also Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 108 (S.D.N.Y. 2015) ("Because the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute the minimum contacts and

reasonableness requirements of due process have similarly been met.").

**B. Analysis**

Fan has alleged facts sufficient to demonstrate specific jurisdiction over PHL. New York's long arm statute permits a New York court to exercise personal jurisdiction over a defendant "who in person or through an agent…transacts business within the state or contracts anywhere to supply goods or services in the state." N.Y.C.P.L.R. § 302(a). This language requires two things: "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Medicrea USA, Inc. v. K2M Spine, Inc.*, No. 17 CIV. 8677 (AT), 2018 WL 3407702, at *4 (S.D.N.Y. Feb. 7, 2018) (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). Satisfying the second prong "does not require a causal link between the defendant's New York business activity and a plaintiff's injury, but rather a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Id.* at *7 (internal quotation omitted).

Fan alleges that the decision to implement the 2017 COI Increase was made in New York, thus establishing a direct link between his breach of contract claim and PHL's New York business conduct. According to Fan, "Gass and Cheliotis make all the major executive decisions about PHL and its business, including the COI increases at issue in this case. Those decisions, and the events surrounding the COI increase, out of which this action arises, occurred in New York." (Second Amended Compl. ¶ 29). To support this jurisdictional allegation, Fan points to the address included in the letters announcing the 2017 COI Increase, Nassau Re's purchase of PHL and subsequent intent to take control of PHL's life insurance policies, PHL's filings with regulators which list a New York business address, and the New York work location of PHL's top officers. (*See id.* ¶¶ 29-41).

7

The notices alone are likely sufficient to subject PHL to New York's jurisdiction. *See, e.g., Gerstle v. Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503, 511 (S.D.N.Y. 2015) (basing jurisdiction on letters sent to New York where those letters were "directly related to" the plaintiff's claim); *Weinar v. Lex*, No. 13 Civ. 1511(DAB), 2014 WL 325698, at *4 (S.D.N.Y. Jan. 23, 2014) ("Courts applying New York's long-arm statute 'may look to factors such as . . . letterheads showing a New York address.'"). PHL does not dispute that the notices sent to policyholders announcing the 2017 COI Increase were sent on PHL letterhead, listing a New York address for PHL, and providing a New York return address. (*See* Declaration of Thomas Buckingham ("Buckingham Decl."), Dkt. 50, ¶ 10). Subsequent affidavits from the Defendant further establish that some of these letters were actually mailed out from PHL's New York office and that specific guidance relating to the 2017 COI Increase was deployed to PHL's New York office to aid employees in responding to customer inquiries. (*See id.* ¶¶ 9-10). Indeed, to a policyholder who received this notice, New York would appear to be the only relevant jurisdiction.

Notices aside, Fan's allegation that Nassau Re, operating from New York, was the true driver behind PHL's most recent COI increase clearly suffices to establish personal jurisdiction in New York. *Bradley v. Staubach*, No. 03 Civ. 4160(SAS), 2004 WL 830066, at *6 (S.D.N.Y. Apr. 13, 2004) (finding jurisdiction where New York corporate officer was "key figure" in transaction subject to plaintiff's claim.); *see also In re Refco Inc. Sec. Litig.*, Nos. 07-md-1902 (JSR), 08-cv-7416 (JSR), 2012 WL 12906289, at *14 (S.D.N.Y. Aug. 10, 2012). PHL's declarations show that PHL's two most senior officers spend at least part of the work week in Nassau Re's New York office. (Declaration of Kostas Cheliotis ("Cheliotis Decl."), Dkt. 51, ¶¶ 7-8). The Court also must accept as true Plaintiffs' allegation that Cheliotis, one of only two officers who made the final

decision to approve the 2017 COI Increase, did so while in New York.[2] PHL further concedes that the deputy general counsel who provided legal advice on the decision works in Nassau Re's New York office. (Cheliotis Decl. ¶ 15). While PHL contends that the research and work that went into assessing the 2017 COI Increase was largely done by Connecticut-based employees and a third-party vendor based in Chicago, (Buckingham Decl. ¶ 7), there is no requirement that every act at issue in a claim stem from the forum state. *See Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 282 (E.D.N.Y. 2016). Plaintiffs' supported allegations that a major decisionmaker behind the 2017 COI Increase was based in New York is sufficient to support a finding of personal jurisdiction.

Consistent with the law in this Circuit, holding that Plaintiffs' allegations satisfy New York's long-arm statute also supports the conclusion that the exercise of personal jurisdiction here is constitutional. *See, e.g., Artists Rights Enf't Corp. v. Jones*, 268 F. Supp. 3d 491, 494 (S.D.N.Y. 2017). PHL has clearly availed itself of New York through the business it conducts with New York residents, its New York customer service center, and its close working affiliation with Nassau Re's New York office. (*See* Second Amended Compl.¶¶ 23-43). PHL argues that regardless of whether the minimum contacts test is satisfied, the exercise of personal jurisdiction here is nonetheless unreasonable because Fan is not a New York resident. (PHL's Reply, Dkt. 54, at 2). But that is not the issue; rather it is the Defendant's substantial New York conduct which convinces the Court that the exercise of personal jurisdiction over PHL is both constitutional and reasonable.[3]

---

[2] In his declaration, Cheliotis is unable to recall where he was when he made this decision, stating, "I may have been in Connecticut, New York, or another location." (Cheliotis Decl. ¶ 13). His declaration does clearly establish, however, that he resides principally in New York, spends at least one day a week in Nassau Re's New York office, and that he also often works remotely, although he fails to specify from where he does so. (*Id.* ¶ 7).

[3] PHL cites to *Sherwin-Williams Co. v. C.V.*, No. 14-CV-6227(RA), 2016 WL 354898, at *5 (S.D.N.Y. Jan. 28, 2016) to support its position that the exercise of jurisdiction here is unreasonable. In *Sherwin-Williams*, however, the defendant was a Mexican-based company and the court found New York had no interest in the outcome of the

Taking Fan's undisputed and supported allegations as true, it is clear that he has more than satisfied his *prima facie* burden.[4]

## II. Request to Transfer *Sua Sponte*

For the first time on reply, PHL also suggests that even if this Court determines it has personal jurisdiction over the Defendant, it should nonetheless *sua sponte* transfer this case to Connecticut pursuant to 28 U.S.C. § 1404(a) because "the District of Connecticut is clearly the superior venue for this action." (Def's Reply, Dkt. 54, at 10). The Court declines PHL's suggestion to transfer this action for the same reasons which guide its finding of personal jurisdiction.

## CONCLUSION

For the above stated reasons, Defendant's motion to dismiss is DENIED. The Clerk of the Court is instructed to close the motion at Dkt. 48.

Dated: New York, New York
March 12, 2019

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge

---

litigation. *Id.* PHL, by contrast, is headquartered in Connecticut and PHL's officers commute to New York weekly. New York also has an interest in this litigation given that PHL's previous settlement agreement, which impacts the Fan's claim in this action, was negotiated in New York, and Fan was directed to communicate any complaints or questions about the 2017 COI Increase to PHL's New York office. (*See* Second Amended Compl. ¶¶ 8, 54).

[4] Fan also argues that the Court has general jurisdiction over PHL pursuant to N.Y. C.P.L.R. § 301 because "PHL is doing business in New York based on its decades-long, continuous and systematic presence within the state" and because PHL is the alter-ego of Nassau Re, which according to Fan, operates out of New York. (*See* Pl's Opp., Dkt. 53, at 19-23). Because the Court finds specific jurisdiction, it does not reach this issue.